IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **WASTE CONNECTIONS OF GEORGIA, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**RED OAK SANITATION, LLC,**<br><br>Defendant. | Civil Action No.: 1:26-cv-01978-WMR |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Defendant Red Oak Sanitation, LLC ("Defendant" or "Red Oak") respectfully submits this brief in support of its motion to dismiss Plaintiff's complaint for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

Plaintiff Waste Connections of Georgia, Inc. ("Plaintiff" or "WCG") is part of Waste Connections, Inc. ("Waste Connections")—one of the largest solid waste services companies in North America. Waste Connections, which is incorporated in Ontario, Canada, and has its principal executive offices there,[1] generates billions of dollars in annual revenue. It is publicly traded on the New York and Toronto Stock

[1] *See* waste_connections_2025_ar.pdf (2025 annual report).

Exchanges (under the symbol WCN), and has a current market capitalization of approximately U.S. $40 billion.

Defendant Red Oak Sanitation, LLC is a relatively small provider of residential trash and recycling services, operating only in certain counties in the Metro Atlanta area.

Waste Connections entered the Metro Atlanta market in late 2018, through its acquisition of a multi-state operator, American Disposal Service Inc., which had a presence in the Metro Atlanta area. In late 2025, Waste Connections of Georgia, Inc., merged "with and into" American Disposal Service of Georgia, Inc., with the surviving corporation existing under the name American Disposal Service of Georgia, Inc., a Georgia corporation. Then, effective January 1, 2026, the newly merged American Disposal Service of Georgia, Inc., changed its name to Waste Connections of Georgia, Inc.—the Plaintiff in this action. *See* Notice of Removal, ECF 1; *see also* Complaint ("Compl.") ¶ 7, ECF 1-1 (noting name change in January 2026).

As Plaintiff's Complaint alleges, both Plaintiff and Red Oak "are residential trash and recycling service providers" operating in Georgia, Compl. ¶ 5, and they are competitors in several counties in this District.

On October 2, 2024, in-house counsel for Waste Connections sent Red Oak a "Demand to Cease and Desist," accusing Red Oak of misconduct, including alleged

theft of "approximately a dozen" of WCG's trash carts. The letter stated that WCG was "investigating this theft," "continuing to monitor this situation closely," and might "involve the appropriate authorities." *See* Compl., Exh. E. Because Red Oak believed WCG's accusations to be baseless, it did not write a response to the letter.

On February 17, 2025, in-house counsel for Waste Connections sent Red Oak another "Demand to Cease and Desist." This letter too accused Red Oak of misconduct, and stated that WCG would "continue to monitor and investigate this situation closely." *See* Compl., Exh. F. Having then received a second letter it believed to contain baseless allegations, Red Oak's Anthony Grutadaurio called WCG and denied that Red Oak has engaged in the alleged misconduct. *See* Compl. ¶ 22.

On September 4, 2025, WCG's outside counsel transmitted to Red Oak a letter demanding payment of $805,000 to WCG, to compensate WCG for alleged misconduct resulting in "lost customers, lost trash carts, and lost time and resources," as well as attorneys' fees. *See* Notice of Removal, Exh. C, ECF 1-3. Accompanying that demand letter was a draft complaint against Defendant, substantially similar to Plaintiff's filed Complaint. *See* Notice of Removal, Exh. D, ECF 1-4.

Red Oak reviewed WCG's draft complaint, and conveyed to WCG that it viewed the causes of action in WCG's draft complaint as unfounded. Nevertheless,

preferring to avoid the costs of litigation against an opponent with nearly unlimited financial resources, Red Oak offered WCG a monetary settlement, to resolve all of WCG's potential claims. However, Red Oak was, and remains, unwilling to accede to unreasonable and unjustified non-monetary settlement terms, which would impair and impede its ability to compete fairly against the much larger, deep-pocketed Waste Connections.

On March 12, 2026, WCG filed its long-threatened complaint against Red Oak, in the Superior Court of Cobb County, Georgia. Red Oak removed the case to federal court on April 10, 2026. ECF 1.

## ARGUMENT

Plaintiff's complaint should be dismissed, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim.

### I. Applicable Pleading Requirements[2]

While a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint must include "more than labels and conclusions, and a formulaic recitation of the

[2] "[T]he federal pleading standard applies to cases removed to federal court." *Johnson v. Specialized Loan Servicing, LLC*, 2022 WL 320854, at *2 (11th Cir. Feb. 3, 2022); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 438 (1974) ("The Federal Rules of Civil Procedure, like other provisions of federal law, govern the mode of proceedings in federal court after removal.").

elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Even allegations that "in form" appear to speak directly to an alleged offense may, upon a "fair reading," be exposed as "merely legal conclusions resting on" prior allegations. *Id*. at 564. Conclusory allegations and legal conclusions "masquerading as facts" will not prevent dismissal. *See Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *Trevino v. Kia Am., Inc.*, 2025 WL 3567110, at *1 (N.D. Ga. Nov. 7, 2025); Order at 12, *Lindsay v. Emory Univ.*, No. 1:22-cv-00886-WMR (N.D. Ga. Sept. 11, 2023), ECF 66.

A complaint must also set forth enough facts to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "plausibility standard" "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id*. (quoting *Twombly*, 550 U.S. at 557). The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports the plaintiff's claim. *Twombly*, 550 U.S. at 556.

These pleading standards apply separately to each claim in a plaintiff's complaint. *See Iqbal*, 556 U.S. at 680-84; *ECB USA, Inc. v. Savencia Cheese USA, LLC*, 148 F.4th 1332, 1347 (11th Cir. 2025).

*       *       *

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Particularity "means that a plaintiff must plead facts as to time, place, and substance of the defendant's alleged fraud, specifically, the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." Order at 7, *Floorcoverings Int'l, Ltd. v. Justice*, No. 1:25-cv-00585-WMR (N.D. Ga. Aug. 11, 2025), ECF 24; *see also United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1357 (11th Cir. 2006).

The following causes of actions asserted by Plaintiff are subject to Rule 9(b): Count I,[3] Count II,[4] Count III,[5] Count IV,[6] Count V,[7] Count VI,[8] and Count VIII.[9]

---

[3] *See Bracy v. Americold Logistics LLC*, 2025 WL 552676, at *9 (N.D. Ga. Feb. 19, 2025) (applying Rule 9(b) to GUDTPA claim based on alleged misrepresentations and deceptive omissions); *Ace Tree Surgery, Inc. v. Terex Corp.*, 2017 WL 1836307, at *3 (N.D. Ga. Feb. 21, 2017) (same).

[4] *See Edwards-Astin v. Medtronic Minimed, Inc.*, 2008 WL 11319723, at *4 (N.D. Ga. June 4, 2008) (applying Rule 9(b)) to dismiss GFBPA claim); *Pulmonary Assocs. of Charleston PLLC v. Greenway Health, LLC*, 2020 WL 9073551, at *10-12 (N.D. Ga. June 29, 2020) (applying Rule 9(b) to claims for fraud, negligent misrepresentation, and violation of the FBPA).

[5] *See* Compl. ¶ 53 (predicating common law unfair competition claim on allegations that Red Oak "intentionally and falsely represented association or affiliation" with WCG, and engaged in alleged conduct "to mislead, confuse, and deceive" WCG and its customers).

[6] *See* Compl. ¶ 57 (predicating tortious interference claim on allegations that Red Oak "falsely represented association or affiliation" with WCG).

[7] *See Next Century Commc'ns Corp. v. Ellis*, 318 F.3d 1023, 1027 & n.1 (11th Cir. 2003); *Or.-Idaho Utils., Inc. v. Skitter Cable TV, Inc.*, 2019 WL 13240634, at *6 (N.D. Ga. Feb. 5, 2019).

[8] *Inman v. Am. Paramount Fin.*, 517 F. App'x 744, 748 (11th Cir. 2013) ("[Plaintiff] failed to plead sufficient factual allegations . . . to support its . . . negligent misrepresentation claims as required by Rule 9(b)."); *Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012) ("For the claims alleging fraudulent conduct—i.e., the claims for fraud, collusion, and negligent misrepresentation—[plaintiff] fails to plead with particularity the actions of [defendant] that form the basis of those claims as required by Rule 9(b)."); *Quashie v. Olympus Am., Inc.*, 315 F. Supp. 3d 1329, 1340-42 (N.D. Ga. 2018) (dismissing claims for fraudulent misrepresentation and negligent misrepresentation because plaintiff did not provide the "who, what, when, where, and how required by Rule 9(b)").

[9] *Hix v. Acrisure Holdings, Inc.*, 2022 WL 2803633, at *12 (N.D. Ga. July 18, 2022) (Theft by deception "is essentially fraud-based and must be pleaded with

## II. Counts I-IX Should Be Dismissed for Failure to State a Claim Under Applicable Pleading Standards

Plaintiff's Complaint alleges misconduct by Red Oak falling into five categories: (1) alleged misrepresentations by Red Oak about the relationship between Plaintiff and Red Oak; (2) allegations about Red Oak's provision of postcards to potential customers; (3) allegations that Red Oak has stolen trash carts belonging to Plaintiff; (4) allegations that Red Oak applied stickers to trash carts belonging to Plaintiff; and (5) allegations that "a man affiliated with Red Oak" impersonated Plaintiff's customers.

Plaintiff's threadbare allegations about those five categories do not set forth facts sufficient to allege plausibly a violation of any of the causes of action set forth in Counts I-IX.

### A. Alleged Misrepresentations About the Relationship Between Plaintiff and Red Oak

Plaintiff claims that "[s]ince at least 2024, Red Oak has made false statements to Waste Connections of Georgia customers that Red Oak and Waste Connections of Georgia had merged, consolidated, or been parties to a transaction of some kind."

---

particularity" under Rule 9(b).); *Wilson v. Nationstar Mortg., LLC*, 2015 WL 11622466, at *3 (N.D. Ga. June 24, 2015) (plaintiff failed to allege the "specific nature of the deceit" or "how" defendants committed theft by deception as required by heightened pleading requirements); *Bivin-Hunter v. Wyndham Vacation Resorts, Inc.*, 2010 WL 11601332, at *10 (N.D. Ga. Sep. 1, 2010) ("Plaintiffs must plead theft by deception claims with particularity and state the 'who, what, where, when, why, and how' of the alleged acts in order to survive defendant's motion to dismiss.").

Compl. ¶ 10. This conclusory accusation is accompanied by an allegation about a single customer, who purportedly "reported [to Plaintiff] that a Red Oak representative showed up at her door in 2024 and told her that Red Oak had merged with [American Disposal Services]," and then for a period of time was billed by both Plaintiff and Red Oak." Compl. ¶¶ 29-30. On the basis of these thin allegations, Plaintiff asserts claims under Counts I (Compl. ¶ 38), II (Compl. ¶ 46), IV (Compl. ¶ 57), V (Compl. ¶ 63) and VI (Compl. ¶ 72). But those causes of action are unsupported by the allegation that Red Oak made misrepresentations to Plaintiff's customers about its relationship with Plaintiff.

First, the recording of the telephone call that is the basis for Paragraphs 29-30 of the Complaint does not support Plaintiff's factual allegations, or its causes of action.[10] Contrary to Plaintiff's allegation, the caller never said Red Oak represented

---

[10] The telephone call recording referred to in Complaint Paragraphs 10 and 30 is properly before the Court when considering Red Oaks's Rule 12(b)(6) motion. *See, e.g.*, *Horsley v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002); *Daewoo Motor Am. v. Gen. Motors Corp.*, 459 F.3d 1249, 1266 n.11 (11th Cir. 2006); *Baker v. City of Madison*, 67 F.4th 1268, 1276-77 (11th Cir. 2023) (extending incorporation-by-reference doctrine to body cameras, and noting the doctrine has been "applied . . . to various types of documentary evidence"); *Stuppard-Wilson v. Fulton County*, 2025 WL 2484199, at *5 n.6 (N.D. Ga. Aug. 28, 2025) (considering video from Board of Commissioners hearing); *Hoffman v. Cenlar Agency, Inc.*, 2013 WL 1285126, at *2 (S.D. Cal. Mar. 27, 2013) (considering recording of phone call that was "integral to plaintiff's claims"). Plaintiff's counsel provided counsel for Red Oak with a copy of the audio recording. Exhibit A to this Brief is a true and correct copy of a certified transcript of the audio provided to Red Oak by Plaintiff. Exhibit B to this Brief is a copy of the audio file provided to Red Oak by Plaintiff, which is being sent to the

to her that the parties had "merged, consolidated, or been parties to a transaction." *Compare* Compl. ¶¶ 10, 29 with Exh. A (certified transcript of audio recording). Instead, the call recording refutes Plaintiff's allegation. Plaintiff's representative on the phone asked the caller: "Did they [Red Oak] tell you we [WCG] are partnering with them?" The caller responded: "No." *See* Exh. A (certified transcript of audio recording) at 13:14-16.

Second, without the deficient allegations about the recorded phone call, all Plaintiff is left with is the vague and general allegation of Paragraph 10. But that is insufficient to survive application of even ordinary pleading standards. Yet Counts I, II, IV, V and VI are subject to, and fail to satisfy, the heightened pleading requirement of Rule 9(b), which obligates a plaintiff to "plead facts as to time, place, and substance of the defendant's alleged fraud, specifically, the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." Order at 7, *Floorcoverings Int'l, Ltd. v. Justice*, No. 1:25-cv-00585-WMR (N.D. Ga. Aug. 11, 2025), ECF 24.

Third, Plaintiff fails to adequately or plausibly allege essential elements of the causes of action it pleads based on supposed misrepresentations about the relationship between Plaintiff and Red Oak. *See* Counts I (Compl. ¶ 38), II (Compl.

---

Court because Red Oak understands the audio recording cannot be filed through the Court's ECF system.

¶ 46), IV (Compl. ¶ 57), V (Compl. ¶ 63) and VI (Compl. ¶ 72). For example, Plaintiff fails to adequately or plausibly allege that Red Oak used Plaintiff's trade name, engaged in any deceptive or fraudulent act, passed-off Plaintiff's services as its own, acted improperly, acted maliciously or with intent to injure, or caused Plaintiff actual injury or financial harm.[11]

### B. Allegations About Red Oak's Provision of Postcards to Potential Customers

Plaintiff complains that Red Oak provided Plaintiff's customers with "postcards addressed to [WCG] with instructions to cancel services and not contact [WCG] regarding the notice," Compl. ¶¶ 15-20, and asserts claims under Counts IV (Compl. ¶ 57), VI (Compl. ¶ 74), and VIII (Compl. ¶ 87), based on the postcard allegations. But those causes of action are unsupported by the postcard allegations.

---

[11] *See Tana v. Dantanna's*, 611 F.3d 767, 773, 782 (11th Cir. 2010) ("[T]he elements to establish deceptive trade practices under Georgia's Uniform Deceptive Trade Practices Act . . . are identical to those required to prevail on Plaintiff's federal infringement claim," among which is "that the other party had adopted a mark or name."); *Tiismann v. Linda Martin Homes Corp.*, 637 S.E.2d 14, 17 (Ga. 2006) (a "private FBPA claim has," among its elements, "a violation of the Act," namely "an unfair or deceptive act"); *Crossfit, Inc. v .Quinnie*, 232 F. Supp. 3d 1295, 1308-10 (N.D. Ga. 2017) (discussing Lanham Act's prohibition on passing off, and noting the "federal Lanham Act analysis governs the analysis of" claims for "deceptive trade practices in violation of Georgia's Uniform Deceptive Trade Practices Act"); *Mercer Global Advisors Inc. v. Crowley*, 2023 WL 2531727, at *8 (N.D. Ga. Mar. 15, 2023) (to prevail on tortious interference claim plaintiff must prove that defendant "acted improperly and without privilege," "acted purposefully and maliciously with the intent to injure," and "caused the plaintiff some financial injury").

Count IV (tortious interference) requires showing that Red Oak acted improperly, and also maliciously with intent to injure,[12] but it is lawful for Red Oak (or any other provider of trash and recycling services) to provide potential customers with a postcard like those pictured in Exhibit C to the Complaint: "Persuading someone to break a contract is not wrongful on its own," and "a failed attempt to persuade someone to amend a contract is certainly not wrongful." *Nationwide Cap. Corp. v. ADP, Inc.*, 2007 WL 2479292, at *2 (N.D. Ga. Aug. 24, 2007); *see also Kirkland v. Tamplin*, 645 S.E.2d 653, 656 (Ga. Ct. App. 2007) (Plaintiff "must show more than that the defendant simply persuaded a person to break a contract."). Thus, Plaintiff has failed to plausibly allege essential elements of its tortious interference claim based on Red Oak's provision of postcards.

Moreover, Counts IV, VI and XIII each require showing financial injury to Plaintiff. But Plaintiff cannot plausibly allege it *lost customers* because Red Oak provided potential customers with postcards, given that Plaintiff's own Complaint states Plaintiff "calls ***all*** customers who purportedly sent a Cancellation Notice postcard to confirm the cancellation." Compl. ¶ 19 (emphasis added). Thus, according to Plaintiff, no customer cancellations were effectuated by postcards; cancellations were effectuated by phone calls to customers initiated by Plaintiff, after receiving postcards.

---

[12] *See Mercer Global Advisors Inc.*, 2023 WL 2531727, at *8.

As for Plaintiff's gripe that Red Oak provided Plaintiff's customers with postcards "addressed to [WCG] with instructions to cancel services *and not contact [WCG] regarding the notice*," Compl. ¶ 15 (emphasis added), it is unclear what Plaintiff means. If Plaintiff is alleging the postcards instructed customers not to contact Plaintiff, that is disproved by the postcards themselves, which say no such thing. *See* Compl., Exh. C. If Plaintiff is suing based on the presence on the postcards of an option for customers allowing them to decide whether or not to check a box saying "Please do not contact me concerning this cancellation," the exercise of this *choice by the customer* is not Red Oak conduct (and certainly not misconduct), and a *customer's actions* do not satisfy *any* element of the causes of action asserted by Plaintiff against Red Oak.

Similarly, there is nothing false or deceitful about the postcards or their use by a customer—who, when utilizing the postcards, is exercising his or her right as a consumer to select a trash and recycling provider, and conveying that choice in a signed written communication to Plaintiff. Plaintiff has not come close to adequately pleading falsehood or deceit—let alone satisfying the heightened pleaded required by Rule 9(b) to sustain such allegations.

Finally, Plaintiff alleges it "requires the account holder to call customer service" before it will honor a customer request to cancel service, claiming Exhibit D to its Complaint "stat[es] this policy." Compl. ¶ 16. But Exhibit D—which is

undated—does not set forth any "policy," let alone impose a contractual obligation on Plaintiff's customers. It merely asks customers to "[p]lease call . . . to cancel service." In any event, Plaintiff's purported policy with its customers does not render Red Oak's provision of postcards to potential customers unlawful. Ultimately, it is up to customers to decide for themselves what service provider to select, and to fulfill any purported contractual obligations related to termination of service in the event a new service provider is selected. The exercise of customer choice cannot serve as the basis for any cause of action against Red Oak.

## C. Allegations That Red Oak Has Stolen Carts Belonging to Plaintiff

Plaintiff accuses Red Oak of stealing some of Plaintiff's trash carts, Compl. ¶¶ 11, 12, 14, and asserts claims under Counts VII (Compl. ¶ 81-82) and IX (Compl. ¶ 91), based on the supposed thefts. But those causes of action are unsupported by the theft allegations.

Plaintiff's Cease and Desist letters, sent to Red Oak in October 2024 and February 2025, accused Red Oak of stealing "approximately a dozen" of Plaintiff's trash carts. The October 2024 letter stated that Plaintiff was "investigating this theft," "continuing to monitor this situation closely," and might "involve the appropriate authorities." Compl., Exh. E. The February 2025 letter made the same accusation of theft, and stated that WCG would "continue to monitor and investigate this situation closely." Compl., Exh. F.

Despite nearly 18 months of investigation and close monitoring of the situation after sending the October 2024 Cease and Desist letter, Plaintiff's complaint, filed in March 2026, makes no plausible allegation that Red Oak stole carts from Plaintiff. The best Plaintiff can do is direct the Court to photos of trash carts, supposedly taken in *September 2024*, which are so blurry it is difficult make out any words or labels. *See* Compl., Exhs. A & B.

But *even if* "approximately a dozen" carts marked with the words American Disposal were at a Red Oak location in September 2024, *that does not plausibly suggest Red Oak stole those carts*. There are potential alterative explanations. For example, in August 2024 (shortly before the photos marked as Exhibits A and B were allegedly taken), Red Oak acquired assets from Cycle Works, another trash and recycling company operating in the Metro Atlanta area. *See* Compl. ¶ 6 & Exh. F (directing February 2025 Cease and Desist Letter to Cycle Works). Plaintiff is aware that trash and recycling companies sometimes "swap" customers and leave their trash carts with their former customers for use by the new service provider.[13] Cycle Works and American Disposal Services may have swapped some trash carts before Red Oak acquired assets from Cycle Works, which found their way to a Red Oak site in September 2024. This is just one of several potential scenarios about how

---

[13] *See* A tale of two cities: Landfills drive Waste Management and Republic deals in Texas | Waste Dive (Dec. 20, 2018).

Red Oak might have been in possession of "approximately a dozen" carts with American Disposal Services markings—*if* that actually happened. With that scenario in mind, it is noteworthy that Plaintiff *does **not** allege* the carts photographed in Exhibits A and B were stolen by Red Oak. *See* Compl. ¶ 12. In fact, the Complaint provides *no* specifics about cart thefts by Red Oak. Instead, Plaintiff resorts to alleging: "Upon information and belief, hundreds of Waste Connections of Georgia's trash carts have been stolen by Red Oak." Compl. ¶ 14. But this allegation is insufficient. "To be presumed true, allegations founded upon information and belief . . . must be supported by specific facts to render them plausible." *Brock v. City of Atlanta*, 2023 WL 2733202, at *2 (N.D. Ga. Feb. 22, 2023); *see also Alexander v. Labat*, 2025 WL 1358595, at *3 n.3 (N.D. Ga. Apr. 14, 2025 (finding insufficient a "bare, conclusory allegation" made upon "information and belief"); *Doe 4 v. Red Roof Inns, Inc.*, 2020 WL 1872336, at *2 (N.D. Ga. Apr. 13, 2020) ("Allegations made 'on information and belief' are insufficient to withstand a motion to dismiss.").

Here, the Cease and Desist letters incorporated in the Complaint state that Plaintiff was investigating and closely monitoring the supposed theft of its carts by Red Oak. If so, where are the specific allegations about *what* carts were stolen, and *when*? Any *why*? *Why* would Red Oak steal carts from Plaintiff? The Complaint contains no allegations which could render the theft allegation plausible. And

"[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."' *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### D. Allegations That Red Oak Has Applied Stickers to Plaintiff's Carts

Plaintiff accuses Red Oak of covering its trash carts with Red Oak stickers, Compl. ¶¶ 24-26, and asserts claims under Counts II (Compl. ¶¶ 45-46), IV (Compl. ¶ 57), VIII (Compl. ¶ 86) and IX (Compl. ¶ 91), based on the alleged stickering. But those causes of action are unsupported by the sticker allegations.

As an initial matter, Counts II, IV and VIII are subject to the heightened pleading requirements of Rule 9(b), but Plaintiff's sticker allegations fall well short. The only specific stickered carts mentioned in the Complaint are discussed in Paragraph 25, and Plaintiff does not allege those stickers were applied by Red Oak. Moreover, Paragraph 25 fails to satisfy the requirements of Rule 9(b).

Plaintiff does allege, in the next paragraph of the Complaint, that mislabeling of its carts "has misled and confused customers about which company provides their waste services and about the connection between the two companies." But that generic allegation is made "[u]pon information and belief" (Compl. ¶ 26), and in a Rule 9(b) context "pleadings generally cannot be based on information and belief." *Glock v. Glock*, 247 F. Supp. 3d 1307, 1314 (N.D. Ga. 2017).

In support of Count IV (tortious interference), Plaintiff alleges that "[i]n an effort to interfere with [WCG's] customer relationships" Red Oak "vandalized and/or misappropriated [WCG's] property." Compl. ¶ 57 (citing *id.* ¶¶ 24-25). But this allegation is conclusory and implausible. How would applying a Red Oak sticker to a WCG cart *induce* a third party to not enter into or continue a relationship with Plaintiff? *See Mercer Global Advisors Inc.*, 2023 WL 2531727, at *8 ("To prevail" on a tortious interference claim, "a plaintiff must show that the defendant: (1) acted improperly and without privilege; (2) acted purposefully and maliciously with the intent to injure; (3) induced a third party not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff some financial injury.") (internal quotation marks omitted). "'[N]aked assertion[s]' devoid of 'further factual enhancement'" are insufficient. *Iqbal*, 556 U.S. at 678 (second alteration in original) (quoting *Twombly*, 550 U.S. at 557).

In support of Count IX (conversion), Plaintiff alleges Red Oak "wrongfully committed distinct acts of dominion and control over property belonging to [WCG], including . . . trash carts" Compl. ¶ 91 (citing *id.* ¶¶ 24-26). But under Georgia law, a claim for conversion requires that the defendant actually possess the property at issue, and refuse to return the property after return is demanded. *Sterling Planet, Inc. v. GRP Holdco, LLC*, 913 S.E.2d 881, 889 (Ga. Ct. App. 2025) ("In order to establish a conversion claim, a plaintiff must demonstrate that (1) [it] owns title to

or has the right to possess the personal property at issue; (2) the defendant actually possesses the property; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return it.") (internal quotation marks omitted). Here, the Complaint does not allege that Red Oak possessed the allegedly stickered carts, or that there was a demand for the return of stickered carts (or refusal to do so). Instead, Complaint Exhibit G, which Plaintiff included to evidence supposed stickering of its carts, appears to show carts at the curb on someone's home—not in the possession of Red Oak.

### E. Allegations That "A Man Affiliated with Red Oak" Impersonated Plaintiff's Customers

Plaintiff alleges "a man affiliated with Red Oak" impersonated Plaintiff's customers, Compl. ¶¶ 27-28, and asserts claims under Counts IV (Compl. ¶ 57), V (Compl. ¶¶ 64-65, 68-69) and VI (Compl. ¶¶ 73-74), based on the alleged impersonation. But those causes of action are unsupported by the impersonation allegation.

As an initial matter, Counts IV (tortious interference), V (common law fraud) and VI (common law misrepresentation) are subject to the heightened pleading requirements of Rule 9(b), but Plaintiff's impersonation allegations fall short. For example, the Complaint alleges the impersonator was "affiliated" with Red Oak (Compl. ¶ 28), but offers no other details about the identity of this person or the person's relationship to Red Oak. The failure to allege Red Oak's purported

knowledge of, or involvement in, the alleged impersonation fails to comport with Rule 9(b). For example, Count IV requires showing interference by *Red Oak*; Count V requires showing *Red Oak* had knowledge of the alleged impersonation (scienter) and the intention to induce Plaintiff's reliance on the alleged misrepresentation; and Count VI requires showing that *Red Oak* knew the alleged misrepresentation was false. *See Mercer Global Advisors Inc.*, 2023 WL 2531727, at *8; *Wang & Gao Fam. Tr. v. TA Partners LLC*, 2025 WL 2484194, at *8 (N.D. Ga. Aug. 28, 2025) ("In Georgia, fraud has five elements," including "scienter," "intention to induce the party claiming fraud to act or refrain from acting," and "justifiable reliance"); *Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1167 (11th Cir. 1997) ("Under Georgia law, a plaintiff suing for recovery for fraudulent misrepresentations must prove," among other elements, that "the defendant made representations . . . knowing they were false").

Counts IV, V and VI also require showing that Red Oak's actions caused damage to Plaintiff. *See Mercer Global Advisors Inc.*, 2023 WL 2531727, at *8; *Wang & Gao Fam. Tr.*, 2025 WL 2484194, at *8; *Williams*, 120 F.3d at 1167. Again, the requisite Rule 9(b) pleading is absent. Moreover, Plaintiff's own Complaint demonstrates the absence of harm from the alleged impersonation, which Plaintiff reports "was *unsuccessful*." Compl. ¶ 28 (emphasis added). Plaintiff makes no allegation of damage resulting from "unsuccessful" impersonation.

## III. Counts I and II Should Be Dismissed For Additional Reasons

Counts I and II seek injunctive relief. Compl. ¶¶ 40-41, 50-51. Plaintiff's claims for injunctive relief should be dismissed for the additional reason that Plaintiff has not plausibly alleged a likelihood of future harm. *See, e.g.*, *Bailey v. Experian Info. Sols, Inc.*, 2016 WL 9558951, at *7 (N.D. Ga. Dec. 9, 2016) ("Plaintiff has failed to allege a likelihood of future harm, which is a necessity of alleging the injunctive relief afforded by the [GUDPTA]."), *report and recommendation adopted*, 2017 WL 3836115 (N.D. Ga. Jan. 9, 2017); *Carder v. Graco Children's Prods., Inc.*, 558 F. Supp. 3d 1290, 1309, 1327-28 (N.D. Ga. 2021) (finding plaintiffs lacked standing to seek injunctive relief, in case bringing claims under the GFBPA and other statutes, because they failed to plead a threat of future injury). A plaintiff who "does not allege ongoing or future harm, has not shown that he is likely to be damaged within the meaning of section 10-1-373(a)." *See Helpling v. Rheem Mfg. Co.*, 2016 WL 1222264, at *15-16 (N.D. Ga. Mar. 23, 2016). And "[t]o seek injunctive relief," which is a prospective remedy, the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). In other words, the "threatened injury must be *certainly impending* to constitute injury in fact" and "'[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (alteration in original).

Count II should be dismissed for an additional reason: Georgia's FBPA does not "provide a cause of action to non-consumers against their competitors." *See Dombrowsky v. Patricia*, 2012 WL 12873617, at *4 (N.D. Ga. July 31, 2012); *Friedlander v. PDK Labs, Inc.*, 465 S.E.2d 670, 671 (Ga. 1996) ("[I]f a business, as a consumer, sustains damage, it may bring suit under OCGA § 10-1-399(a). However, we are not empowered to expand the coverage of the FBPA to provide a cause of action to non-consumers against their competitors.") (citation omitted), *superseded on other grounds by statute as recognized by Pasternak & Fidis, P.C. v. Recall Total Info. Mgmt., Inc.*, 95 F. Supp. 3d 886, 908 (D. Md. 2015).

## IV. Counts X and XI Should Be Dismissed Because There Are No Underlying Claims That Survive Under Rule 12(b)(6) and Applicable Pleading Standards

Plaintiff's Complaint includes a Count X (Punitive Damages) and Count XI (Attorneys' Fees and Litigation Expenses). But requests for punitive damages and fees cannot survive without underlying claims. *See Blalock v. Alpha Phi Alpha Fraternity, Inc.*, 2022 WL 22899598, at *7 (N.D. Ga. Aug. 8, 2022) ("Plaintiffs cannot seek punitive damages without an underlying substantive claim."); *Trevino*, 2025 WL 3567110, at *3 ("[S]ince Georgia law does not recognize an independent cause of action for punitive damages without an underlying tort, Plaintiff's claim for punitive damages is dismissed."); *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1304-05 (11th Cir. 2009) (under Georgia law, "[b]ecause the court has concluded that

Defendants are entitled to summary judgment with respect to all the Plaintiffs' substantive claims, the claim for punitive damages cannot survive"); *Blalock*, 2022 WL 22899598, at *7 ("Plaintiffs are not entitled to attorney's fees without an underlying substantive claim."); *Trevino*, 2025 WL 3567110, at *3 ("an award under [O.C.G.A § 13-6-11] requires a valid underlying claim"); *Gilmour v. Am. Nat'l Red Cross*, 385 F.3d 1318, 1324 (11th Cir. 2004) ("[A] claim for an attorney's fees under the Georgia statute . . . , O.C.G.A. Section 13-6-11, requires an underlying claim.").

Accordingly, Counts X and XI should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed.

Respectfully submitted this 17th day of April, 2026

*/s/ Bryant J. Anthony*
Bryant J. Anthony
Georgia Bar No. 814838
**BOIES SCHILLER FLEXNER LLP**
100 S.E. Second Street, Suite 2800
Miami, Florida 33131
Telephone: (305) 539-8400
banthony@bsfllp.com

Scott E. Gant (*PHV* Application Pending)
**BOIES SCHILLER FLEXNER LLP**
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 237-2727
sgant@bsfllp.com

*Attorneys for Defendant Red Oak Sanitation, LLC*

## LOCAL RULE 7.1(D) CERTIFICATE

The undersigned counsel certifies that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1. Specifically, Times New Roman 14-point font was used.

*/s/ Bryant J. Anthony*
Bryant J. Anthony
Georgia Bar No. 814838

*Attorney for Defendant Red Oak Sanitation, LLC*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 17th, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which shall serve a true and correct copy of the same upon all counsel of record.

*/s/ Bryant J. Anthony*
Bryant J. Anthony
Georgia Bar No. 814838

*Attorney for Defendant Red Oak Sanitation, LLC*